# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# ABERDEEN DIVISION

**BEVERLY BURTON**                                                                    **PLAINTIFF**

**v.**                                                          **NO.: 1:20-CV-149-JMV**

**COMMISSIONER OF SOCIAL SECURITY**                        **DEFENDANT**

## FINAL JUDGMENT

This matter is before the Court pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable final decision of the Commissioner of the Social Security Administration regarding Plaintiff's application for a period of disability and disability insurance benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit.[1] The Court, having reviewed the record, the administrative transcript, the briefs of the parties, and the applicable law and having heard oral argument, finds as follows, to-wit:

The Plaintiff asserts on this appeal that the Administrative Law Judge (the "ALJ") and the Appeals Council (the "AC") committed the following reversible errors: (1) the AC failed to consider the Medical Source Statement (dated approx. 2 months after the ALJ's decision) of Dr. Castillo, Plaintiff's treating physician; (2) the ALJ's decision and summary of the testimony were

---

[1] Judicial review under 42 U.S.C. § 405(g) is limited to two inquiries: (1) whether substantial evidence in the record supports the Commissioner's decision and (2) whether the decision comports with proper legal standards. *See Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990)). "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citations omitted). The court must be careful not to "reweigh the evidence or substitute . . . [its] judgment" for that of the ALJ, *see Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

inaccurate in relation to the testimony regarding Plaintiff's migraine headaches and in regard to Dr. Moss's report.

## Discussion[2]

By way of background, the ALJ found, following a hearing on July 10, 2019, that the severe impairments from which the Plaintiff suffered were "migraine headaches; undifferentiated connective tissue disease with lupus features; degenerative disc disease of the lumbar spine; depression; and generalized anxiety disorder." Tr. 25. The ALJ found that as a result of these severe impairments, the Plaintiff did not meet a listing. Tr. 26.

The ALJ determined that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except that the Plaintiff can occasionally climb and balance, and frequently handle and finger. The Plaintiff is limited to simple repetitive work with occasional public contact and no fast-paced work, such as production work. Tr. 28. At step four, the ALJ determined that:

> Plaintiff could not perform her past relevant work as a human resource clerk, ticket clerk, or administrative assistant. Tr. 32. At step five, the ALJ determined that, based on Plaintiff's RFC, vocational profile, and VE testimony, Plaintiff could perform the jobs of laundry folder and housekeeper, which each exist in the national economy in significant numbers.

Plaintiff requested review by the Appeals Council and submitted a MSS, dated October 11, 2019. The AC declined to review stating that they "found no reason under our rules to review the [ALJ]'s decision." Further, the AC found that the Medical Source Statement completed by the primary treating physician, Dr. Castillo, was dated October 11, 2019, which was after the hearing

---

[2] The 12-page Chronological Summary of Relevant Information and Medical Treatment set forth by the Plaintiff in her briefing is, in the interest of efficiency, incorporated by reference herein. (A complete medical summary can be found in the Transcript, pages 297-313).

decision, and did not relate to the period at issue. Thus, it was not reviewed by the AC pursuant to 20 C.F.R. § 404.970(a)(5).

  I. First Argument

In support of her first assignment of error, the Plaintiff asserts that the Medical Source Statement from Dr. Castillo "clearly indicates that it relates to the past relevant period" and clearly indicated her problems, and associated limitations, during the relevant period, were more severe than the ALJ, Dr. Saddler, or Dr. Dees [both state agency physicians] identified. [19]. According to the Plaintiff, the failure to analyze the MSS leaves the findings incomplete as it leaves as the only physicians relied upon by the ALJ, Drs. Saddler and Dees, who reviewed only 50 pages of over 400 pages of the Plaintiff's medical records.

In opposition to these arguments, the Commissioner asserts that "nothing in this check-mark form indicates it relates to her condition during the relevant period." Tr. 16-19. As such, the Commissioner asserts it is irrelevant and does not satisfy Plaintiff's burden pursuant to 20 C.F.R. § 404.970(a)(5) to show that the evidence in question is new, material, and relates to the period on or before the ALJ's decision. Nor does it "demonstrate a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). [19].

In the court's opinion, there was no legal error in the AC's decision that the MSS, dated two (2) months after the ALJ's decision, was not properly reviewable by it. 20 C.F.R. § 404.970 provides in relevant part:

> 404.970 Cases the Appeals Council will review.
> (a) The Appeals Council will review a case at a party's request or on its own motion if….
> (5) Subject to paragraph (b) of this section, the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.

In the instant case, the subject MSS is not only dated approximately two (2) months after the ALJ's unfavorable decision, nowhere does it recite that it covers anything other than the Plaintiff's *then current* limitations. In as much as it would require pure speculation to surmise that there had been no change in Plaintiff's medical condition and resulting limitations over the two months since the relevant period ended, the MSS fails to satisfy the requirements for AC consideration under 20 C.F.R. § 404.970(a)(5).

II.     Second Argument

When discussing the migraines, the ALJ stated that Plaintiff had "learned to function during a migraine" and that the medication reduced the intensity of the migraines. Tr. 29. The ALJ further stated that the migraines were "resolved after the Plaintiff took a migraine cocktail." Tr. 30. The Plaintiff argues that these findings are a mischaracterization of the actual evidence.

> [Plaintiff] did testify that she "had learned to function" but that the migraine cocktail, given to her situationally at the hospital, allowed her to "actually stay awake" and that she typically has "to sleep, just—I mean, the medication that I take just basically knocks me out to be able to tolerate a migraine." [Plaintiff] did not state that she was able to completely function with a headache. Nor did she indicate that she would work or even perform most of her ADL's.

In response to these arguments the Commissioner asserts:

> The ALJ found that Plaintiff's migraine headaches constituted a severe impairment, and discussed the evidence related to this condition, finding that Plaintiff was able to function despite her migraine headaches and that medication largely controlled them. Plaintiff testified that her migraine headaches "never go away" but that a migraine cocktail "eased it enough that I could actually stay awake." She went on to testify that she takes a preventative medication that "helps with it" and another medication, Maxalt, for "when the pain is getting strong," indicating that even if she has migraines that "never go away," medication is able to control her headaches. Plaintiff's objective medical evidence shows that medication controls her migraines and she does not experience the extreme medication side effects she claimed. For example, Dr.

> Castillo's records throughout the relevant period contain no complaints of uncontrolled migraines or that she was "constantly" taking migraine medication leading to extreme side effects. Although Plaintiff complained of a headache (along with several other complaints) on September 13, 2018, Dr. Castillo did not modify treatment. While Plaintiff complained of a "daily headache" since her hospital discharge for viral meningitis in January 2019, she later admitted on April 29, 2021 that her headaches were "much less severe." Dr. Castillo also noted that her Carbamazepine, used for treating fibromyalgia, "is also good in controlling her migraine headaches" as of June 2019. . . . The evidence shows that on December 31, 2018, Plaintiff sought treatment at the hospital for a number of complaints, including a headache, but after a drug cocktail and treatment for viral meningitis, she was discharged on January 7, 2019, without further complaints of migraines. The ALJ did not err when he noted that the drug cocktail resolved her headache.

In sum, the Commissioner argues that the ALJ properly considered Plaintiff's migraine symptoms. The court agrees that, as outlined by the Commissioner, the ALJ committed no legal or prejudicial error with reference to the assessment of Plaintiff's headaches and further that, as illustrated above, there is substantial evidence to support the RFC with regard thereto.

### III.  Third Argument

As concerns Plaintiffs' final argument, namely that the ALJ committed legal error because,

> [t]he testing [by Dr. Moss] indicated that [Plaintiff] had an IQ of 61. That this test was valid and that this was consistent with [Plaintiff]'s SPED high school education. Therefore, [t]his should have been found as a severe impairment. Then it should have been analyzed for a listing (12.05), then if found not to meet a listing it should have been incorporated into the limitations.

In response, the Commissioner asserts that, as the ALJ pointed out, Dr. Moss specifically noted that Plaintiff's insufficient effort during testing resulted in the subject test results [aside from two specific tests, not including the aforementioned IQ test] being invalid.

Having reviewed the report of Dr Moss, the court finds that, indeed, the IQ test score on which Plaintiff relies for this assignment of error was found by Dr Moss to be invalid. As such,

Plaintiff has not demonstrated the occurrence of the alleged error on this point. In short, the ALJ did not err by not recognizing an additional impairment based on the invalid testing results obtained by Dr. Moss.

For the foregoing reasons, the court finds that the Plaintiff's assignments of legal error are without merit and that the RFC is supported by substantial evidence in the record. Therefore, the decision of the Commissioner is hereby **AFFIRMED**.

**SO ORDERED AND ADJUDGED** this 1st day of September, 2021.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**